# CASES

IN THE

# APPELLATE COURTS OF ILLINOIS.

FIRST DISTRICT—OCTOBER TERM, 1882.

## W. P. RAMSEY ET AL.
## v.
## THOMAS TULLY ET AL.

| 12    463
| 111   ¹623

1. GENERAL RULE OF DAMAGES WHERE SELLER FAILS TO DELIVER.—
The general rule of damages in the purchase and sale of personal property
where the seller fails to deliver, is the difference between the contract price
and the market price at the time and place of delivery. But where a
specific article is bought for a specific purpose, known to the vendor at the
time of sale, and such article can not be had on the market or has no as-
certainable market value, the general rule does not apply.

2. MEASURE OF DAMAGES.—Where one of two contracting parties, not
being himself in default, suffers a loss by the wrongful default of the other,
he ought to receive full and just compensation therefor. His recovery is
to be limited, however, to such damages as may fairly and reasonably be con-
sidered either arising naturally, i. e., according to the usual course of things,
from the contract itself, or such as may reasonably be supposed to have been
in the contemplation of both parties at the time they made the contract, as a
probable result of the breach of it.

3. EVIDENCE.—Where there was evidence tending to show the making
of a certain contract, appellant had the right to put in evidence as to
damage upon the hypothesis that the contract was proven.

4. WAIVER.—The mere acceptance of a purchased article after the
agreed time for delivery has elapsed, does not of itself constitute a waiver
of damages for the delay, unless such acceptance is attended with such cir-
cumstances as to manifest an intention on the part of the buyer to waive
such damages.

APPEAL from the Superior Court of Cook county; the Hon. ELLIOTT ANTHONY, Judge, presiding. Opinion filed January 3, 1883.

This was assumpsit, brought by appellees against appellants to recover for brick sold and delivered by the former to the latter in the months of June, July and August, 1881. The declaration contains the common counts only, and alleges that Ramsey and Leith were co-partners doing business under the firm name of M. Leith & Co.

The defendants filed separate pleas. Ramsey pleaded the general issue and a plea, duly verified by affidavits, denying partnership and joint liability. Leith pleaded the general issue and a special plea, setting up, in substance, that the brick were sold and delivered to him under a contract in and by which the plaintiffs agreed that for the consideration of nine dollars per thousand, to be paid to them, they would sell and deliver to him all the brick needed for a certain sewer known as the Root street sewer, then being constructed by him, and would deliver for that purpose 25,000 brick per day; that the plaintiffs, though notified and requested by defendant to deliver the brick, refused and failed to do so, but delivered only 7,000 per day, and that by reason of such failure Leith was put to great expense and was compelled to pay workmen larger sums of money, to wit, $5,000, which he would not otherwise have been compelled to pay, and that he was damaged by the delay in procuring his pay for the construction of the sewer in the sum of $1,000, and was compelled to and did, in consequence of such delay, expend money in furnishing extra labor and materials, whereby he suffered damage to the amount of $2,000; that his damage caused by the plaintiffs' failure to deliver the brick as agreed amounted in the aggregate to the sum of $6,000, out of which he offered to recoup, set-off and allow the amount of the plaintiffs' demand.

Issues of fact were joined on these pleas, and there was a jury trial resulting in a verdict for the plaintiffs for $—, for which sum the plaintiffs had judgment and the defendants appealed.

The evidence tended to show the making of the contract for the sale and delivery of the brick as alleged in Leith's special plea, and it appeared the brick were not delivered at the rate of 25,000 per day, but that the average daily delivery was less than half that amount, thereby causing a delay in the building of the sewer for a considerable period, the work not being finished until the latter part of August. The evidence also tended to show that Leith was building the sewer under a contract with the town of Lake; and that Tully sold and agreed to deliver the brick in question, with knowledge that they were being purchased by Leith for the special purpose of fulfilling that contract; and with knowledge that by such contract the sewer was to be completed by July 20, 1881.

It further appears that common brick would not answer for sewer work, but that brick of a particular kind were required, and that from time to time, as the work progressed, appellants notified appellees that they were not delivering brick as needed, and that the work was being delayed in consequence.

On the trial appellant Leith offered to show that it was impossible to procure brick elsewhere; that he endeavored to do so, but that none were to be had, and that he was compelled to, and did, rely wholly upon appellees under his contract with them for brick; that he was delayed and compelled to stop work from time to time for want of brick; that he had to keep under pay high-priced hands, and put them upon inferior work, so that when he had sewer brick he could go on with the job; that in consequence of the delay in completing the sewer he failed to obtain timely estimates from the town of Lake, whereby he sustained damage. But the court being of opinion that inasmuch as the brick were all actually delivered and received by the defendant, though after the time agreed upon, such acceptance was a waiver by the defendant of his right to claim special damages for a breach of the contract set up in his special plea, the court holding that the difference between the contract price and market price of the brick, at the time they were agreed to be delivered, constituted the only measure of damages; to which ruling the defendant excepted.

Messrs. Gary, Cody & Gary, and Mr. J. H. Gilbert, for appellants; that the acceptance by appellants of balance of brick after time agreed upon for its delivery did not waive their right to recoup damages occasioned by appellees' failure to deliver at time agreed, against appellees' claim for the price of the brick actually received, cited Waterman on the Law of Set-off, § 515; Barber v. Rose, 5 Hill, 76; Nibbe v. Brauhn, 24 Ill. 268; Snell v. Cottingham, 76 Ill. 161; Tobey v. Price, 75 Ill. 645; Evans v. C. & R. I. R. R. Co. 26 Ill. 189; Waterman v. Clark, 76 Ill. 428.

The doctrine of recoupment is the doctrine of natural equity: Read v. McAllister, 8 Wend. 115; Streeter v. Streeter, 43 Ill. 162; Waterman on Law of Set-off, § 463; Masterdon v. Mayor, 7 Hill, 70.

The natural and proximate effect of the breach of contract or duty complained of, may be proven to assist in estimating the damages, and each case necessarily depends upon its own peculiar features: Sleuter v. Wallbaum, 45 Ill. 44; Miller v. Mariners' Church, 7 Greenl. 53; Taylor v. Read, 4 Paige, 572; Priestle v. N. I. & C. R. R. Co. 26 Ill. 206; Waters v. Town, 20 Eng. L. & Eq. R. 412; Frazer v. Smith, 60 Ill. 146; I. C. R. R. Co. v. Cobb, 64 Ill. 128; C. B. & Q. R. R. Co. v. Hale, 83 Ill. 360; Hadley v. Caxendale, 26 Eng. L. & Eq. R. 398; Benton v. Fay, 64 Ill. 420; Griffin v. Colyer, 16 N. Y. 489; Long v. Conklin, 75 Ill. 32; Brigham v. Hawley, 17 Ill. 38; Haven v. Wakefield, 39 Ill. 516; McAfee v. Crafford, 13 Howard, 447; Burroughs v. Clancey, 53 Ill. 30; Phelan v. Andrews, 52 Ill. 486; Strawn v. Cogswell, 28 Ill. 457; Havana R. & E. R. R. Co. v. Walsh, 85 Ill. 59.

As to partnership: Irvin v. N. C. & St. L. R'y Co. 92 Ill. 103; Hefner v. Palmer, 67 Ill. 161.

Mr. James Springer, for appellees; that for the breach of contract appellants' remedy was to purchase brick in the market, and charge appellees the difference between the contract price and the market price, cited C. B. & Q. R. R. Co. v. Hale, 2 Bradwell, 151; Phillips, etc. v. Seymour, 1 Otto, 646; Bulkly v. U. S. 19 Wallace, 37; Miller v. Mariners'

Church, 7 Greenl. 51; Chambers v. Ft. Bent Co. 14 Texas, 34; Peterson v. Whitney, 23 Barb. 24; Hubbard v. Weldom, 27 Vt. 65.

Where a verdict is in reasonable conformity with the evidence, it will not be disturbed: Wallace v. Wren, 32 Ill. 146; White v. Clayes, 32 Ill. 325; Umlauf v. Bassett, 38 Ill. 96; C. & R. I. R. R. Co. v. Coal and Iron Co. 36 Ill. 60; Tolman v. Race, 36 Ill. 472; C. & R. I. R. R. Co. v. Hutchins 34 Ill. 108; Schultz v. Lepage, 21 Ill. 160; Smith v. Schultz, 1 Scam. 490; Allen v. Smith, 2 Scam. 97; C. B. & Q. R. R. Co v. Stumps, 69 Ill. 409.

Where evidence is conflicting, it is the province of the jury to weigh it, and their decision will not be disturbed unless there is *manifest* injustice: Edgmon v. Ashelby, 76 Ill. 161, 208; Clifford v. Luhring, 69 Ill. 401; Kirghtlinger v. Egan, 75 Ill. 141; Plummer v. Rigdon, 78 Ill. 222; Gilbert v. Bone, 79 Ill. 341.

As to partnership: Wheeler v. McEldowney, 60 Ill. 358; Poole v. Fisher, 62 Ill. 181.

WILSON, J.   As the judgment of the court below must be reversed on other grounds, and the cause be remanded for a new trial, we omit the expression of any opinion as to the sufficiency of the evidence to support the allegation of the partnership of the defendants, the burden of proving which was, under the sworn plea of the defendants, cast upon the plaintiffs.

Two other questions are presented for determination: first, do the facts proven, taken in connection with the evidence, offered by the defendants but rejected by the court, show a proper case for the application of the doctrine of recoupment of the special damages claimed, and secondly, did the acceptance of the brick by the defendants after the time for their delivery had passed, constitute a waiver of such special damages as the defendants would have been entitled to recoup in the absence of a waiver?

The general rule of damages in the purchase and sale of personal property, where the seller fails to deliver, is the dif-

ference between the contract price and the market price at the time and place of delivery. This rule is based on the principle that full indemnity is thereby offered to the buyer, as by going onto the market he may procure the commodity contracted for, charging the seller with the difference in price, if any.

But to this general rule there are various qualifications and exceptions, depending upon the facts of each particular case. Where a specific article is bought for a specific purpose, known to the vendor at the time of sale, and such article can not be had on the market, or has no ascertainable market value, the rule does not apply. In Sedgwick on the Measure of Damages, Vol. I, 558 and note, it is said: "A plaintiff can not recover for any consequences which would not follow, in the usual course of things, the seller's failure to make delivery, but he can sometimes recover more than the difference between the contract and market price."

In Parsons v. Sutton, 66 N. Y., which was an action to recover for certain *plate paper*, which the seller had failed to deliver at the time agreed upon, the doctrine on this subject, as also the rule of pleading in such cases, is comprehensively stated thus: " The ordinary measure of damages is the difference between the contract and market price at the time and place of delivery. And this is the measure to be applied in a case where the pleading is in the ordinary form, simply alleging the contract and breach, and claiming the damage. But this is not the only damages. * * * Where the buyer can go into the market and buy the article which the seller has failed to deliver, this is the only rule, as it offers full indemnity. Special damages are allowed when this rule will not furnish full indemnity. If there is no market for the article where it is to be delivered, and it can not be had there with the use of reasonable diligence, and the buyer suffers damage, because of the seller's failure to deliver, which is the proximate and natural consequence of such failure, such damage can be recovered."

The doctrine, as thus stated, is in accordance with the current of both the American and English decisions. See notes

Ramsey et al. v. Tully et al.

to Cutter v. Porvell, 2 Smith's Leading Cases, 18.   Our own Supreme Court, in numerous cases, have recognized the same rule.   Thus, in Benton v. Fay, 64 Ill. 417, which was a suit to recover damages for the non-delivery of a planing machine which the plaintiff had purchased of the defendant, the court below instructed the jury that the damages would be the difference between the contract price and the market value of the article at the time and place of delivery.   Mr. Justice Lawrence said the rule given by the court is the correct rule in actions for the delivery of ordinary merchandise, which can at once be replaced in the market, but it is not applicable to a case where an article is bought for a specific purpose, known to the vendor at the time of sale.      *      *      In such cases the ordinary rule of damages would furnish a very inadequate compensation for the damages actually suffered."

In Ill. Cent. R. R. Co. v. Cobb, 64 Ill. 141, the court in discussing the measure of damages, say: "The rule undoubtedly is that as between vendor and vendee, or shipper and carrier, that where the article is desired for a special purpose, that fact should be communicated to the vendor or carrier, if it is made the foundation of special damages against them, and if it is of a character likely to affect the action of the vendor or carrier."

So, too, in Priestly v. N. I. & C. R. R. Co. 26 Ill. 205, which was an action against the railroad company for not delivering machinery transported by it in proper time; the court instructed that the only measure of damages was the market value of the machinery at the time it arrived, and the time when it should have arrived.   The Supreme Court held the instruction clearly wrong, saying that when property sold is designed for a special purpose in a special business, and is not a common or ordinary object of sale in the market, the general rule has no application, but that adequate indemnity should be offered to the plaintiff for the loss he has sustained. And in regard to the extent of the recovery, Breese, J., said: "If the plaintiff had alleged in his declaration that he had made valuable contracts to be executed with the machinery, which would have yielded him profits, the jury, though they would not be bound to adopt any specific contract that may

have been made, yet, if reasonable evidence is given that the amount of profit would have been made as claimed, the damages might be assessed accordingly."

In Miller v. Mariners' Church, 7 Greenl. 56, the Supreme Court of Maine, by way of illustrating the rule, put a hypothetical case very similar in its facts to the case now in hand, and conclude their opinion by saying: "The party who is not chargeable with a violation of his contract should do the best he can in such cases, and for any unavoidable loss occasioned by the failure of the other party, he is justly entitled to a liberal and complete indemnity."

It is quite unnecessary to multiply the citation of cases. The principle which underlies them all is that where one of two contracting parties, not being himself in default, suffers a loss by the wrongful default of the other, he ought to receive full and just compensation therefor. His recovery, however, is to be limited to such damages, in the language of Baron Alderson in Hadley v. Baxendale, "as may fairly and reasonably be considered either arising naturally, *i. e.*, according to the usual course of things, from the contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as a probable result of the breach of it." This definition excludes all such damages as are remote or merely speculative.

We think the kind of damages claimed in the defendant Leith's special plea are such as properly come within the limit of recovery. They are such as under the evidence given and offered might be the direct and natural result of appellee's failure to deliver the brick and so must be deemed to have been in the contemplation of both parties at the time of making the contract. It was known to appellees that appellants, or one of them, had a contract with the Town of Lake for the building of the sewer, and that it was to be finished by a specified time; that the brick in question were bought to be used for that specific purpose, and that common brick would not answer. Under these circumstances it was competent for appellants to prove that upon the failure of appel-

Ramsey et al. v. Tully et al.

lees to deliver the brick as agreed, they endeavored to procure other sewer brick but could find none in the market; that in consequence of the failure of appellees to deliver the brick, and the inability of appellants to obtain them elsewhere, they were hindered and delayed in finishing the sewer, whereby they sustained damages of the kind and nature set out in the plea.

It is claimed by the counsel for appellees that appellants failed to show any such contract for the delivery of brick, as is set up in Leith's special plea, and that therefore no foundation was laid for the introduction of proof of damages. It is sufficient to say that there was evidence tending to show the making of such contract, and appellant had the right to put in evidence as to damage upon the hypothesis that the contract was proven.

. 2.. Did appellants waive their right to special damages by accepting the brick after the agreed time for delivery had elapsed?

The question of waiver is largely one of intention, each case depending upon its own special facts. A voluntary acceptance, without objection, of a purchased article, where there are no compulsory circumstances necessitating such acceptance, and no special damages to be occasioned thereby, may properly be regarded as evincing an intention to waive the time specified for delivery. But where the circumstances are such as to show that the acceptance can, in no just sense, be regarded as voluntary, but rather as compulsory, the presumption of an intention to waive does not arise. Appellants were engaged in the construction of a public work, for the completion of which they had given bonds. The work was but half finished, and they could obtain brick of the requisite quality nowhere but from appellees. They notified them of their necessities, and requested them to comply with their contract. To say that an acceptance, after the time for delivery had passed, under such circumstances, was voluntary in such sense as to evince an intention to waive their right to claim damages for the delay, would be a perversion of language. They did the best they could in the situation in which they found themselves placed.

The Supreme Court of Iowa in Hansen v. Kirtly, 11 Iowa, 555, hold that the acceptance of an article after the day fixed for its delivery, does not operate as an absolute waiver of the damages sustained by the delay, but might be considered in evidence as tending to show a waiver, but it must depend upon the circumstances of each case. That was the case of a ferry boat, which the seller agreed to deliver by the 1st of June, but it was not delivered until August 1st. The court said: "That such use was not an absolute waiver of the plaintiffs' right to recover damages, for the delay is clearly stated in the instruction, and that such is the law we have no doubt."

In Barber v. Rose, 5 Hill, 76, where, in an action for work and labor, it appeared the work was commenced under a special contract which the plaintiff failed to perform at the agreed time, but after such failure he consented to go on and finish the work, which he did; it was held that though the modification of the contract operated to enable the plaintiff to recover on a *quantum meruit*, it did not amount to a waiver of damages for the plaintiff's failure to perform at the day, and that the defendant might recoup such damages.

In Flannery v. Rohrmayer, 46 Conn. 558, where a person for whom a building had been erected, accepted the same and paid the contractor in full without objection, although the work was known to him to be defective, it was held that the owner was not thereby precluded from recovering damages for the defect; the court saying that the right to recover must depend upon all the circumstances.

See, also, cases cited in 1 Sedgwick on the Measure of Damages, 282, note.

But we need not go beyond our own Supreme Court for decisions in analogous cases.

Thus, in Havana, Rantoul & C. R. R. Co. v. Walsh, 85 Ill. 58, where the plaintiffs contracted with the defendant to sell and deliver railroad ties, to be used in the construction of defendant's road, but failed to deliver them at the agreed time, it was held that the defendant might recoup its damages for the delay, notwithstanding its acceptance of the ties after the time for their delivery had elapsed.

So in Haven v. Wakefield, 39 Ill. 509, where the lessor of a lot on which he had agreed to erect a building for the storage of broom-corn, failed to complete the same in the time agreed upon, and the lessee took possession of the building in an unfinished state, it was held that, while the lessee by taking possession, waived the right to be released from the covenants of the lease on his part, he might, in an action against him for the rent, recoup his damages for the lessor's delay.

In Priestly v. N. I. & C. R. R. Co., 26 Ill. 205, where the railroad company failed to deliver certain machinery for a mill in due time, it was held that, under proper notice and averments, specific damages might be recovered for the delay.

In Tobey v. Price, 75 Ill. 645, where the plaintiff was employed to do the mason work in the erection of a building, and was delayed by the failure of the employer in furnishing the iron work, but continued his job after the agreed time for its completion, it was held he did not thereby waive his right to damages for delay.

And in Waterman v. Clark, 76 Ill. 428, where the defendant gave his note in settlement of an account for feeding his cattle and hogs, it was held that he did not waive his right to recoup damages for the improper feeding of the stock, by giving his note with knowledge of such damage.

We think, both upon reason and authority, it may be considered as the established rule that the mere acceptance of a purchased article after the agreed time for delivery has elapsed does not of itself constitute a waiver of damages for the delay, unless such acceptance is attended with such circumstances as to manifest an intention on the part of the buyer to waive such damages. Here the circumstances negative such an intention.

Being of opinion that the court below erred in rejecting the testimony offered by the defendants in support of Leith's special plea, the judgment must be reversed, and the cause remanded for a new trial.

Reversed and remanded.